Ehrlich v. The Ætna Life Insurance Company.

EHRLICH, *Appellant*, v. THE ÆTNA LIFE INSURANCE COMPANY.

1. **Waiver.** Waiver is ordinarily a question of intention and a fact to be determined by the triers of fact.

2. ——: CONTRACT. An acceptance of a sum of money due regardless of other stipulations in a contract, will not be regarded as a waiver of such other stipulations.

3. **Contract, Construction of.** A stipulation by one in a contract to devote his entire time and energy to the business of an insurance company and to no other, must receive a reasonable interpretation. He is bound to devote his time and energies with that degree of diligence and attention which is usual among industrious business men engaged in like business, and pursuing no other avocation.

4. **Servant, Discharge of:** ELECTION. Where a servant is wrongfully discharged by his master, he may sue for a breach of the contract or he may elect to treat the contract as rescinded, and recover on a *quantum meruit* for the services rendered.

5. **Contractor, When Prevented From Completing Work:** REMEDIES. A contractor who has been prevented by the other party from completing his work, may waive the action for damages and sue for the value of the work done and materials furnished, and he is not in such case restricted to a *pro rata* share of the contract price.

6. **Quantum Meruit:** PLEADING. It is no objection in such action that the petition sets out the contract and a compliance with its terms and the termination of the contract by defendant, provided it shows that the plaintiff elects to treat it as canceled and seeks to recover for the services rendered.

7. ——: ——. Where the petition counts on both the theory of a breach of the contract and a *quantum meruit*, the remedy of the defendant is by motion.

| 88 | 249 |
| 36a | 580 |
| 88 | 249 |
| 39a | 70 |
| 88 | 249 |
| 52a | 526 |
| 88 | 249 |
| 120 | 376 |
| 88 | 249 |
| 127 | 524 |
| 88 | 249 |
| 76a | 526 |
| 88 | 249 |
| 81a | 518 |
| 88 | 249 |
| 157 | 149 |
| 88 | 249 |
| 165 | 94 |
| 88 | 249 |
| 95a [3] | 60 |
| 98a [1] | 64 |
| 98a [1] | 67 |

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Noble & Orrick* for appellants.

(1) The measure of damages, as fixed by the court

below in the instructions given, is correct under the pleadings and the conduct of the trial in the court below. *Moore v. Mountcastle*, 72 Mo. 605; *Pomeroy v. Benton*, 57 Mo. 550; *Flowers v. Helm*, 20 Mo. 324. (2) It is not true that plaintiff sued for breach of contract and recovered on a *quantum meruit*. (3) Even if the petition only alleged general damages by reason of the breach of contract assigned, it would justify the instruction given by the court and the verdict rendered by the jury. *Moore v. Mountcastle*, 72 Mo. 605. (4) In the petition facts are stated which would entitle plaintiff to special damages, even if under a general averment of damages he would not be entitled to them. (5) The cause was tried on the theory adopted by both the respondent and appellant upon the pleadings as made, and for that reason the judgment should be sustained. *Pomeroy v. Benton*, 57 Mo. 550; *Flowers v. Helm*, 29 Mo. 324; *Leabo v. Goode*, 67 Mo. 134. (6) The amount of damages is not excessive. (7) The acceptance of the penalty by respondent paid by appellant in December, 1881, was a waiver of all breaches of the contract on part of appellant, which existed prior to such acceptance and of which respondent had knowledge at the time. *Pike v. Nash*, 3 Abbott's (N. Y.) App. 610; *Williams v. Porter*, 51 Mo. 441; *Waters v. Harvey*, 3 Houst, (Del.) 441; *Mellon v. Smith*, 65 Mo. 315; *Garrison v. Dingman*, 56 Mo. 150; *Fitch v. Woodruff*, 29 Conn. If a servant has been guilty of misconduct and the master, knowing it, retains him in his service, *prima facie*, it is a waiver, and a condonation is presumed. *Ridgway v. Hungerford*, 3 Ad. & El. 171. (8) The construction by the court of appeals of the contract of September 16, 1880, as to the duty of the plaintiff under the clause requiring him to devote his entire time and energy to the business of the defendant and to no other, is erroneous and unreasonable. The plaintiff by the contract did not become respondent's

slave. (9) The court of appeals erred in holding that a failure by-appellant to report to the respondent by the tenth of the month, as required by the contract, prior to the payment of the penalty of $172.50, constituted cause for canceling. the contract by respondent in February, 1882, although appellant, for months of January and February, 1882, did make his reports, etc., as required by the contract.

*G. A. Castleman* for respondent.

(1) In a suit for damages for the breaches of a specific contract, there cannot be any recovery upon a *quantum meruit. Perry v. Barnet,* 18 Mo. 140 ; *Yeats v. Ballentine,* 56 Mo. 533 ; *Eyerman v. Mt. Sinai Co.,* 61 Mo. 490 ; *Cutter v. Powell,* 2 Smith's Leading Cases (4 Am. Ed.), Hare & Wallace's Notes, 40, *et seq.,* and cases cited. This was a suit for damages for the breaches of a specific contract. *Yeats v. Ballentine,* 56 Mo. 538 ; *Eyerman v. Mt. Sinai Am. Co.,* 61 Mo. 490. (2) In a suit for damages for the breaches of a specific contract, the measure of damages is the natural and proximate consequences, measured by the terms of the contract itself. 2 Sedgwick on Meas. of Dam. (7 Ed.) 436, side page 203. In the case at bar, upon the petition, the only measure of damages was the present value of the commissions stipulated in the contract upon the collection of renewal premiums to become due during the life of his contract upon policies in force in the territory covered by his contract. *Lewis v. Ins. Co.,* 61 Mo. 539 ; *Ensworth v. Ins. Co.,* 1 Bigelow, Life and Accident Rep., 645 ; *Ins. Co. v. Green,* 77 Ind. 590 ; *Nixson v. Ins. Co.,* Ins. Law Journal (Aug. 1882) 570 ; *Life Ass'n of America v. Ferrill,* 60 Ga. 414 ; May on Ins. (2 Ed.) 576. (3) A servant wrongfully discharged by his master has his election to sue immediately for damages for the breach of the contract of employment, or, where his

wages are not fully paid up to the date of his discharge, he may sue upon a *quantum meruit* for services actually rendered. But, having made his election, he must stand by it. Bliss on Code Pleadings, 17; *Booge v. Ry. Co.*, 33 Mo. 212; *McCullough v. Baker*, 47 Mo. 401; *Chamberlin v. Scott*, 33 Vt. 80; *Moody v. Leverick*, 4 Daly, 401; *Polk v. Daly*, 4 Daly, 411; 2 Smith's Leading Cases, *supra*. But this election cannot be made if the contract price has been fully paid up to the time of his discharge. In such case the sole measure of damages will be the loss or injury occasioned by the breach of contract. *Moody v. Leverick*, 4 Daly, 409; *Ream v. Watkins*, 27 Mo. 516; *Stone v. Vimont*, 7 Mo. App. 281. In the case at bar plaintiff's wages were paid in full up to the date of his discharge. (4) It is the duty of an employe, improperly discharged before his time of employment expires, to make reasonable exertions to obtain other employment, and what he might have earned in other employment is competent evidence in mitigation of damages. *Lewis v. Insurance Co.*, 61 Mo. 534; *Stone v. Vimont*, 7 Mo. App. 277. (5) The difficulty or even the impossibility of an agent's employing sufficient agents both in number and efficiency to canvass the territory covered by his contract (when such is the requirement of his contract) furnishes no excuse for his failure to comply with its terms. *Lewis v. Ins. Co.*, 61 Mo. 539. (6) The construction of a written contract is a question of law for the court, and it is error to submit such a question to the jury. Charging the Jury (Thompson) sec. 12, and authorities cited; *Hudson v. Railroad*, 53 Mo. 539; *Hickey v. Ryan*, 15 Mo. 46; *Newman v. Lawless*, 6 Mo. 279.

BLACK, J.—This suit grows out of a contract made by plaintiff and the defendant dated the sixteenth of September, 1880. By the terms of the contract, plaintiff was appointed the general agent of the defendant for

this state, Jackson county excepted, to procure applications for insurance, receive the premium thereon and on the renewals thereof and to collect renewals on existing policies. It seems the defendant had before been engaged in the insurance business in this state, but had withdrawn therefrom and by this contract it sought to re-enter the state for business. For the services of himself and his agents, the plaintiff was to have specified commissions on the premiums collected. Among the stipulations contained in the contract are the following, viz: "This contract is to continue in force and effect so long as the agreements made by said plaintiff are fully complied with. Should plaintiff fail to comply with any of the conditions or obligations of this agreement, it may be terminated by said company without delay. The books and records of the office at St. Louis are the property of the company. The plaintiff on his part among other things agrees to devote his entire time and energy to the business of the company and to no other, and employ a sufficient number of agents to canvass the said territory named, and to see that the company is represented therein by efficient active agents ; that he will account to said company on or before the tenth day of each month, or at any other time when required, for all premiums received by him or his agents ; that he will furnish each year $250,000 of new insurance during the term of four years from the date of the contract, or pay seventy-five cents for every $1,000 of that amount which he fails to furnish ; if he furnishes more than that amount in any one year he is to have credit for the excess on the next year, and if in the four years he furnishes more than the aggregate for those years then he is to have the money thus paid refunded."

The petition sets out at length the contract, and alleges a compliance with its terms, and states that on the twenty-seventh of February, 1882, the defendant, without his consent, appointed another agent for the

territory and informed him that it had cancelled the contract, declined to send him renewal receipt for collection and required him to turn over the books, etc., to such other person. The defendant denies in its answer that plaintiff complied with the terms of the contract, but alleges that he made breach of the agreement on his part before noted, because of which it cancelled the contract and notified the plaintiff to turn the books, etc., over to another person.

The evidence of plaintiff conduces to show that he appointed the requisite number of agents, had an office and kept a clerk there at St. Louis, and generally complied with the terms of the contract, save that he did not at all times make his reports monthly and sometimes made two or three in one. Of this he says the company sometimes complained; and sometimes they said nothing; they called his attention to his negligence and he said he would do better, when perhaps he did the same thing, but when it came to the wind up, he held strictly to the contract. From his cross-examination, it appears that during the time of his agency he was engaged in buying some eight or twelve policies in the Globe Insurance Company of New York, which was in liquidation, from which he made, he says, less than $1,000. In March, 1881, he was in New York a week on business for others. He also transacted some business by correspondence for Mr. Parsons, for which he received six hundred dollars. He seems to have informed the defendant of this trip and the officers at once made complaint of his absence. Notwithstanding these complaints he went to the Minnesota lakes and remained there from thirteenth of July until third of September. He also took some part in the organization of a riding school, but this, he says, was only to give the use of his name to another party, and that it consumed little or none of his time. The total amount of insurance taken, that is, the amount of the policies, was $30,000, and he

procured no new insurance after October, 1881. After several demands he remitted to the company $172.50 in December, 1881, because of his failure to get the $250,000 of new insurance for the first year ending September 16, 1881.

1. The first question is, did the acceptance of this check operate as a waiver of all prior breaches of which the defendant had knowledge? The court instructed that it did. Ordinarily a waiver is a question of intention, and a fact to be determined by the triers of fact. This amount was due the defendant regardless of the other stipulations of the contract. It could not be said because the defendant accepted the premiums arising from a policy issued upon an application procured by the plaintiff, that it, therefore, waived all breaches of the contract in failing to devote his time and attention to the business. Indeed the defendant appears to have been making complaint of this want of attention. Nor did the acceptance of that check operate as such a waiver, but we do not see how the defendant could thereafter claim any right to cancel the contract because of a failure to pay that particular demand at an earlier day. The authorities cited by the respondent do not support the proposition contended for. The second instruction given at the request of the plaintiff should have been refused and the defendant's first was properly refused.

2. Upon the stipulation that the plaintiff "agrees to devote his entire time and energy to the business of said company and to no other," and the evidence before detailed, with the evidence of a witness that life insurance business was very dull in the summer months, the court told the jury that the "plaintiff was required to devote only his entire time and energies during business hours to the business of defendant, and no other during those periods the jury may find from the evidence the business of life insurance as provided for in the agreement could be transacted." Mr. Wharton in his treatise

upon the Law of Agency, section 274, says : " We cannot expect permanently from an agent that vehement and exhausting action which we can only expect occasionally from the principal.   The most we have a right to expect is that degree of diligence which is usual among faithful, capable and industrious business men doing the same kind of work.   When we appoint an agent this usage qualifies and shapes the agency."

This contract must have accorded to it a reasonable interpretation.   It cannot be said to mean that plaintiff was bound to work twenty-four hours each day.   He still had the usual and accustomed hours for rest, recreation and social duties and pleasures.   He continued to be a member of the society and community in which he lived and moved with liberty to discharge the reasonable demands made upon him as such.   He could not, of course, do any business for others to the neglect of the business of the defendant, or to its detriment.   He agreed to devote his time and energies to the business of the defendant.   This he was bound to do with that degree of diligence and attention which is usual among industrious business men engaged in a like business and pursuing no other avocation.   The contract, we think, does not mean that he could devote his time to defendant's business during business hours and then conduct some other business during the other hours ; nor can it be said there is any particular time of the year in which life insurance business cannot be conducted, as would seem to be indicated by the instruction.   The instruction should be modified to conform to the views above expressed.   Upon the evidence, as it now stands, without any evidence of usage or any other circumstance to justify plaintiff's absence for such a length of time, there was a sufficient cause for his removal.   The case he makes is *prima facie* against himself and the court might well have so declared.

3.   Of the defendant's instructions refused, the second as presented is too general to be of any assistance

to the jurors; the third is objectionable as giving undue prominence to particular portions of the evidence; the fourth might be given; we do not find any evidence of a failure to appoint a sufficient number of agents to fairly and reasonably canvass the state, and the others were properly refused. Had there been such evidence they would be proper enough.

4. Where a servant is wrongfully discharged by the master, he may sue for breach of the contract; or he may elect to treat the contract as rescinded and recover on a *quantum meruit* for the services rendered. In the latter case he can only recover for the services up to the ·date of the discharge. *Ream v. Watkins*, 27 Mo. 516; Whart. on Cont. sec. 716. So a contractor who has been prevented from completing his job, may waive the action for damages and sue for the value of the work done and materials furnished, and he is not in such case restricted to a *pro rata* share of the contract price. *McCullough v. Baker*, 47 Mo. 401; *Mitchell v. Scott et al.*, 41 Mich. 108; *Fitzgerald v. Allen et al.*, 128 Mass. 234. Here the plaintiff's theory is that he undertook to build up a business, and for his services was to have twenty-five and thirty per cent. of the premiums paid the first year on renewal term policies and policies requiring annual payments; and on the other hand he agreed to furnish a defined amount of new business, that being deprived of the benefits of the contract he should be allowed the value of the services rendered. If he is entitled to recover at all he may recover the value of his services and clerk hire estimated on the basis of furnishing his own office room, less, of course, what he received from the business and what is in his hands.

While the court instructed upon this theory as to the measure of damages it is contended that this suit is not for services rendered, but for damages for breach of contract and nothing else. It is no objection that the petition sets out the contract and a compliance with its

terms and the termination of the contract by defendant, provided it shows that the plaintiff elects to treat it as cancelled and seeks to recover for the services rendered. The issues thus presented will be in the end the same as if the plaintiff had declared under a *quantum meruit* count. The petition states that to establish the business plaintiff "did expend his time and services and a large sum of money out of his own funds for the benefit of said agency, and by reason of the acts of defendant aforesaid plaintiff lost $7,000, being profits which he would have made by furnishing $1,000,000 of insurance under said contract;" it prays for $15,000 damages, less $1,848.15, conceded to be in the hands of the plaintiff. The petition appears to count on both theories and the remedy is by motion; if none is made we think the alleged profits should be disregarded and the suit treated as one for services.

The judgment of the court of appeals is affirmed. All concur.