Glover v. Henderson.

GLOVER v. HENDERSON, *Appellant.*

Division One, February 19, 1894.

1. **Pleading:** QUANTUM MERUIT: CONTRACT. A petition averring a contract of employment, the rendering of services and expenditure of moneys in its performance, plaintiff's wrongful discharge by defendant and the value of his services and expenditures, less receipts, states a cause of action on a *quantum meruit* and not one for damages for breach of contract.

2. **Principal and Agent:** REVOCATION OF AGENCY: COMPENSATION. While a principal may revoke an agency where the agent has no interest in its subject-matter, yet if the agent has in good faith incurred expense and expended time and labor in the matter or the agency, the principal will not be permitted to terminate it and appropriate the result of the agent's services without compensating him therefor.

3. ———: ———: ———. Where the principal has expressly of impliedly employed the agent for a definite period of time and discharges the agent without cause before the expiration of the period of employment the principal will be liable to the agent to the same extent as in the case of the breach of any other contract, and in such case the agent may elect to treat the contract as rescinded and bring an action to recover the value of his services and money expended.

4. ———: ———: ———. A contract of agency to sell lots, stipulating for additional pay to the agent should he sell them in one year, gives him one year to sell them and though not ·engaging his whole time, it can not be revoked by the principal so long as the agent is diligent in his business.

5. ———: SELLING LAND: VALUE OF SERVICES: EVIDENCE. An agent may show, in an action for the value of services in selling land, what is usually charged in the same place for like services, and may introduce real estate agents to testify to the value of such services, although they usually work on commission.

6. ———: ———: MEASURE OF DAMAGES. The measure of plaintiff's damages is the reasonable value of the services rendered and the money expended in performing such services.

7. **Evidence:** BURDEN OF PROOF. The burden of proving a fact is on the party who asserts the affirmative of the issue.

8. ———: CONSENT. Consent may be proved by direct evidence or it may be inferred from facts and circumstances.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Karnes, Holmes & Krauthoff* for appellant.

(1) The plaintiff's agency was not for a definite period, nor coupled with an interest. Therefore, the defendant had the power to terminate it at will.

*State ex rel. v. Walker*, 88 Mo. 279; *Missouri v. Walker*, 125 U. S. 339; *Sewing Machine Co. v. Ewing*, 141 U. S. 635; Mechem on Agency, secs. 204, 207, 209, 614; *Payne v. Co.*, 13 Lea, 507. (2) The plaintiff testifies that he reserved the right to quit the work involved in discharging the agency at any time; hence the defendant had the same right to terminate it. The agreement for a $1.500 bonus bound neither party to continue the agency for a year. *Coffin v. Landis*, 46 Pa. St. 426; *Kirk v. Hartman*, 63 Pa. St. 97; *Rhodes v. Forwood*, L. R., 1 App. Cases 256; Mechem on Agency, sec. 204; *Chambers v. Seay*, 73 Ala. 372. (3) If the plaintiff's suit can be maintained as one to recover the balance due under the contract, as claimed by him, the rule laid down for the measure of his damages is erroneous, and the verdict is excessive. (4) The court erred in admitting the evidence of plaintiff's witnesses as to the amount paid other agents for selling real estate. *First.* The evidence related to what had been done in other instances without any proof that the practice testified to was sufficiently uniform and well established to constitute a usage. *Second.* The witnesses admit that in nearly every instance the matter was regulated by contract between the parties. *Third.* The testimony was not confined to the sale of additions upon the plan adopted in this case, which is admitted to have been a unique and unusual one. Lawson on Usages, sec. 187; 2 Greenl. on Evidence, sec. 251, note *a*; *Ins. Co. v. Waterman*, 54 Fed. Rep. 839; *Beirne v. Dord*, 5 N. Y. 95; *Ober v. Carson*, 62 Mo. 209; *Thomas v. Steam Pump Co.*, 28 Mo. App. 563. (5) The court erred in giving the first instruction for the plaintiff. That instruction negatived the right of the defendant to terminate the plaintiff's agency without regard to whether it was for a definite or an indefinite period,

and, although such agency may not have been coupled with an interest. See authorities cited under point 1. (6) The court erred in giving the second instruction for the plaintiff. (7) The court erred in refusing the instructions asked by the defendant concerning the burden of proof in this case. This burden clearly rested upon the plaintiff, and in view of the fact that the weight of the testimony, direct and circumstantial, is so clearly against the plaintiff it was of the utmost importance that the jury should have been told where the burden rested. Best on Evidence (by Chamb.), p. 274, note; 1 Greenl. on Evidence, sec. 74; Bailey on Onus Probandi, p. 240. (8) The court erred in modifying the defendant's instruction number 4. The reply in this case pleaded an express consent by the defendant to the placing of the building loans in controversy. The modification complained of proceeded upon the idea of an implied consent, which is the equivalent of a waiver. The allegation of express consent did not warrant this submission of the issue of waiver. *Ehrlich v. Ins. Co.*, 88 Mo. 249. The modification was erroneous in not informing the jury what facts proved an implied consent. Similar instructions have often been condemned by this court. *Fugate v. Carter*, 6 Mo. 267; *Hickery v. Ryan*, 15 Mo. 62; *Atterbury v. Powell*, 29 Mo. 429; *Wiser v. Chesley*, 53 Mo. 547; *Morgan v. Durfee*, 69 Mo. 469; *Boogher v. Necce*, 75 Mo. 383; *Yarnall v. Railroad*, 75 Mo. 575; *Turner v. Railroad*, 76 Mo. 261; *Anderson v. McPike*, 86 Mo. 293; *Estes v. Fry*, 22 Mo. App. 80; *Speak v. Dry Goods Co.*, 22 Mo. App. 122.

*E. W. Taylor* and *Gage, Ladd & Small* for respondent.

(1) That the petition in this case was *quantum meruit* for services rendered and expenses incurred,

there can be no doubt. This was a case where the agent had only partially completed his undertaking; where the fact that he had not completed his undertaking is attributable to the wrongful revocation of his authority by his principal, before he had time or opportunity to perform fully. *Ehrlich v. Ins. Co.*, 88 Mo. 249; Mechem on Agency, sec. 609. (2) The petition alleged, the proof showed, and the jury found, that the employment of plaintiff as defendant's agent was for at least one year. It was, therefore, fixed for a definite time. The plaintiff being wrongfully discharged, *quantum meruit* for his services and expenses was one of his proper remedies. *Ehrlich v. Ins. Co.*, 88 Mo. 249, and cases cited; Mechem on Agency, sec. 621. (3) Where an agent, after part performance, is discharged and brings *quantum meruit* to recover for his services and expenses, the measure of his damages is the reasonable value and amount of these, less, of course, what he has already received, and in this recovery he is not limited by the contract price. Smith on Master and Servant, sec. 96; *Ehrlich v. Ins. Co.*, 88 Mo. 249; Mechem on Agency, sec. 622. (4) There was no error in modifying plaintiff's fourth instruction.

BLACK, P. J.—Plaintiff brought this suit to recover the value of services rendered and expenses incurred in selling for defendant a large number of lots. The trial resulted in a verdict and judgment for the plaintiff for $4,000, from which the defendant appealed.

Mr. Henderson, the defendant, owned a tract of thirty acres of land adjoining Kansas City, upon which there was an incumbrance of $25,000. He laid the land off into an addition under the name of Round Top, so as to contain two hundred and eighty lots, the lots in general having a front of twenty-five feet each. He had purchased the land on speculation and became

exceedingly anxious to sell. With this end in view, he and the plaintiff Glover, a real estate agent, had frequent consultations. Early in 1890 they developed the following scheme for selling the lots: Each purchaser was to make a small cash payment, and monthly deferred payments of $10 each, the deferred payments to be evidenced by notes. After the payment of a given number of notes, the defendant was to execute to the purchaser a warranty deed, the purchaser securing the unpaid notes by deed of trust upon the lot purchased. In this way sufficient cash was to be obtained to procure a release of the particular lot from the incumbrance. The deed constituting the incumbrance contained a clause to the effect that lots should be released from time to time upon the payment of a given sum per lot.

The defendant had made a declaration of trust in favor of Mr. Waller and Mr. Rhodes, whereby each became entitled to a one-fourteenth interest in the land. After the plan for selling the lots had been matured, the parties, including Waller and Rhodes, visited the addition and placed prices upon each and all of the lots, which varied from $4 to $22 per front foot. These prices were calculated and arranged so that all the lots would produce about $80,000, that being the cost price of the property to the defendant, with interest added. The prices so fixed were noted on a plat called by Glover the net price plat. Each party kept a copy of this plat.

According to the evidence of the plaintiff, the agreement finally made between him and the defendant was to the following effect: Plaintiff was to have the exclusive right to sell the lots. For his compensation he was to add one, two, three or four dollars per front foot, as he saw fit, to the prices designated on the plat of net prices. The net prices with this addi-

tion were to constitute the selling prices, for which cash and notes were to be taken. If plaintiff sold out the addition in one year, he was to have an additional compensation or bonus of $1,500 cash. The plaintiff was to pay the wages of all necessary employees, subagents, and the expenses of advertising out of his own pocket. The expenses of staking out the lots, clearing off and sodding part of the land were to be paid by plaintiff in the first instance, but for all such expenses he was to be reimbursed out of sales made by him.

The defendant testified that the net price plat, as it is called by the plaintiff, was no more than a temporary statement of the prices, and that they were subject to change from time to time. He testified in direct and positive terms that plaintiff was to have $1 and only $1 per foot for selling the lots, and his evidence in this respect is supported by that of Waller and Rhodes. In other respects his evidence as to the terms of the contract is the same as the evidence of the plaintiff. All agree as to the $1,500 bonus.

The plaintiff made up what he calls selling plats, and caused a large number of them to be published and distributed. These plats designated the prices at which the lots would be sold, as a general rule, at $2 per front foot in excess of the prices stated in the net price plat. Lots were sold, contracts made, and notes received on the basis of the prices thus stated on the selling plats. The evidence shows that plaintiff entered into the business with great energy and zeal. He advertised the property in almost every conceivable manner, placed an office and an agent on the land, and employed various subagents, paying them their commissions out of his own pocket as he had agreed. Between April and the last of August, 1890, he had sold one hundred and sixty-four lots, that is to say, about four thousand out of the seven thousand front

feet. These sales were reported to the defendant from time to time, the reports giving the prices according to the net plat; but it appears the defendant signed the contracts which set forth the true selling prices, and he had access to and saw the notes taken, so that it is clear he knew for what prices the lots were being sold. At the last named date a difference arose between the plaintiff and the defendant, the plaintiff claiming the right to take all notes in excess of the net plat prices, and the defendant claiming that plaintiff was entitled to a compensation of $1 per foot only. This difference led to the discharge of plaintiff.

The foregoing is but an outline of the evidence found in the printed record of five or six hundred pages, so far as it relates to the issues made by the petition and answer. The evidence relating to the counterclaims will be noticed hereafter. The chief disputed question of fact in the trial court was, whether the defendant was to have $1 per foot or whether he had a right to add to the net plat prices such sums as he saw fit, for his compensation. The plaintiff's evidence and some circumstances support this theory of the contract, while the evidence of the defendant and that of Waller and Rhodes support the defendant's theory. This was, therefore, a question of fact for the jury to determine, and we deem it unnecessary to set out the evidence in detail, for there being evidence to support the verdict, the question of fact is not open to review here.

The plaintiff, in his petition, sets out the contract according to his version of it, and states that pursuant to it he sold lots to the amount of $44,732, in notes and cash, being $8,044 over the aggregate of the prices designated on the net price plat; that he has received in cash $1,004, and in notes of purchasers, $4,004; that, though he was ready and willing to continue to

act for the defendant as his agent, the defendant refused to allow him to make any further sales. He then states that he has expended the sum of $1,317.42 in advertising the addition for sale, and performed work and services in and about selling the lots of the value of $12,000, and asks judgment for $13,317.42, less $5,008, received in cash and in notes.

The defendant, in his answer, states that "he employed plaintiff to act for him in the sale of lots in said addition, so long as the defendant might desire to continue said employment and sale," and this is followed by a general denial.

From the instructions given, the jury must have found that the contract between plaintiff and the defendant was the same in its terms as testified to by the plaintiff, as we have before stated his evidence; that, up to the first of September, 1890, the plaintiff carried out the terms of the contract on his part, and was ready to go on with it; that defendant then refused and declined to allow the plaintiff to sell any more lots. The jury allowed plaintiff the reasonable value of his services, including moneys expended to the extent that the outlays were reasonable and necessary in the performance of his duties.

1. The first question is whether this action is *quantum meruit* for services rendered and reasonable expenses incurred, as claimed by the plaintiff; or whether it is an action for damages for breach of contract. That the petition declares upon *quantum meruit* we think there can be no doubt. It is true the petition sets out the contract of employment, and shows that services were rendered and moneys expended in the execution of it; but it proceeds to aver that defendant wrongfully discharged the plaintiff, and then states the value of the services rendered and moneys expended, and prays judgment therefor, less the

amount received. Had the plaintiff declared for the value of his services, saying nothing about the contract and to this the defendant had answered by setting up the special contract according to his version of it, and the plaintiff had replied by setting out the contract according to his theory of it, and alleged that the defendant wrongfully revoked the agency, because of which he demanded the value of his services up to the date of his discharge, the issues would have been in substance the same that they are under the present pleadings. It is the theory of our code that the plaintiff must state the facts constituting his cause of action. If he proposes to treat the contract as rescinded and recover for the value of services rendered, as he may do under certain circumstances, there is no reason why he may not set out the contract, the rendition of services thereunder, the wrongful termination of the contract by the defendant, and then declare for the value of the services rendered. Such is the plaintiff's petition in this case, and it is clearly a declaration upon *quantum meruit*. *Ehrlich v. Ins. Co.*, 88 Mo. 249.

2. The contract in question was one of agency, so that we are brought to the question whether defendant, having revoked the agency, is liable to the plaintiff for the *value* of services rendered and expenses incurred up to the date of revocation.

There is and can be no claim made in this case that plaintiff had conferred upon him a power coupled with an interest. And as he had no interest in the subject-matter of the agency, the principal had the power, and, in a qualified sense, the right, to revoke the agency at his will. *State ex rel. v. Walker*, 88 Mo. 279; Mechem on Agency, sec. 204. But the question of the liability of the principal to the agent for services rendered is another and a different thing from the power or even right to terminate the agency. Con-

tracts of agency are numerous and widely variant in their objects, purposes and terms; so that the question of compensation of the agent, when the agency has been revoked by the principal, will depend upon a variety of circumstances. It is laid down by a recent text writer that "the mere fact that an agent is employed to perform a certain act will not, of itself, amount to an undertaking on the part of the principal that the agent shall be permitted to complete the act, at all events, and the principal may fairly, and in good faith, revoke the agency without liability, at any time before performance." But "where an agent is employed to perform an act which involves expenditure of labor and money before it is possible to accomplish the desired object, and after the agent has in good faith incurred expense and expended time and labor, but before he has had a reasonable opportunity to avail himself of the results of this preliminary effort, it could not be permitted that the principal should then terminate the agency and take advantage of the agent's services without rendering any compensation therefor." Mechem on Agency, sec. 620. This is good sense, and, we believe, good law.

But there is still another well settled and more specific rule which will determine this branch of this case, and that is this: Where there is an employment for a definite period of time, expressed or implied, and the agent is discharged without cause before the expiration of that period, the principal will be liable to the agent the same as in case of a breach of any other contract; and in such cases the agent may elect to treat the contract as rescinded and bring an action to recover the value of his services and money expended. Mechem on Agency, secs. 614, 621; *Ehrlich v. Ins. Co.* 88 Mo. 249; *Kirk v. Hartman*, 63 Pa. St. 97.

The contract between the plaintiff and the defend-

ant, as found by the jury, contains no express stipulation to the effect that the agency should continue for one year but it contains the stipulation that the plaintiff should have an additional compensation of $1,500, if he sold the lots within one year; and the question then is whether there arises an implied agreement that he should have one year in which to sell the lots.

Although a contract on its face and by its terms appears to be obligatory on one party only, yet if it was the manifest intention of the parties that there should be a correlative obligation on the other party, the law will imply such obligation. *Lewis v. Ins. Co.*, 61 Mo. 534. But, as said in *Churchward v. Queen*, L. R. 1 Q. B. at side p. 195, "Where a contract is silent, the court or jury who are called upon to imply an obligation on the other side which does not appear in the terms of the contract must take great care that they do not make the contract speak * * * contrary to what * * * was the intention of the parties." The question after all is one of intention, to be gathered from the tenor and all the terms of the contract, considered in the light of the subject-matter of which the contract treats.

The subject of the agency in question was one whole addition, consisting of two hundred and eighty lots, and the plaintiff was to have the exclusive right to sell all of them. It is plain to be seen that the $1,500 was an inducement to plaintiff to accept the agency. It was a part, and a considerable part, of the compensation which he was to receive. It is true this part of the consideration was conditional, that is to say, upon the fact that he sold the lots within one year, but the very condition shows that he was to have a year in which to perform it. His right to have a year in which to sell the lots is clearly implied, and this implied part

of the agreement is as certain and definite as if it had been stated in so many words.    This conclusion seems to us irresistible.

Nor was it necessary to submit this question to the jury; for the jury found that the plaintiff was to have an additional compensation of $1,500, if he sold out the lots within one year.    The clear intendment and construction of this language is that he was to have a year in which to sell out the addition.

But it is said the plaintiff testified that he reserved the right to quit the work at any time, and hence the defendant had the corresponding right to terminate the agency at will, notwithstanding the agreement concerning the $1,500.    The plaintiff testified that he did not bind himself to sell the addition for $80,000 within one year, or to pay a forfeiture if he failed to sell it.    He states at one place in the lengthy examination that he did not bind himself to devote the entire year to the sale of Round Top, and could have quit at any time, but he was not that kind of a man.    At another place he says he was bound to give his time and attention to the sale of the land and to try to sell it.    He evidently undertook to make a reasonable effort to sell the lots. This much is implied in the terms of the agreement found by the jury to have been made by these parties. It is equally true that he was not bound, at all events, to continue his efforts during the entire year.    But it does not follow that the defendant had the right to revoke the agency, without cause, at any time during the year.    Says Mechem: "It is, in many cases, difficult to determine whether the parties have made a definite agreement for a fixed time or not.    It is not indispensable that they should, in the first instance, be both bound for the same period.    It may lawfully be made to rest with either party to determine, at his

option, that the agreement shall be one for a certain time." Mechem on Agency, sec. 211.

Such questions as this must be considered in the light of the nature and object of the agency, and the agreement which the parties have made. The defendant was anxious to dispose of the addition, and the scheme devised to sell it was problematical and doubtful. The defendant agreed, as we have seen, to give the plaintiff one year in which to earn, if he could, the extra $1,500, and this agreement as to time is not void or unlawful because the plaintiff had the right, at his option, to abandon the contract before the expiration of the year. The fact that plaintiff had such right or option gave the defendant no right to terminate the agency before the expiration of the year so long as the plaintiff was making diligent efforts to sell the lots.

3. As the plaintiff can maintain this action to recover the value of his services and the reasonable expenses incurred by him, it follows that he had the right to produce evidence showing the value of such services. Evidence of what is usually charged for similar services at the same place was admissible. And it was also competent to show by persons who were acquainted with the value of like services, what, in their opinion, the services of the plaintiff were worth. The witnesses called by the plaintiff for this purpose were real estate agents, and their evidence shows that they were fairly acquainted with the value of like services. The fact that commissions in like cases are generally regulated by contract, and the further fact that these lots were sold under what is called a unique and unusual plan, did not affect the competency of the evidence of these witnesses as to the value of the services rendered by the plaintiff. And it was also competent to show what commissions had been paid in the same locality, for selling other additions. The differ-

ences between the plans adopted in making such other sales, and the sales in question, would be a matter for the jury to consider, but such differences do not affect the competency of the evidence. There was no error in the admission of evidence on this subject.

4. It follows also from what has been said that the measure of the plaintiff's damages was the reasonable value of the services rendered and the moneys fairly expended in performing such services. The instructions as to damages proceed on this theory, and there is no error in them.

5. The defendant asked the court to give the following instructions, both of which were refused:

"1. The burden is on the plaintiff to show to the jury by the preponderance of the evidence in this case that the agreement between him and the defendant was for a greater compensation than a commission of one dollar per front foot.

"2. The burden of proof is on the plaintiff to prove to the jury by the preponderance of credible evidence in this case that the agreement between him and the defendant, was that the plaintiff should be entitled to any and all excess realized from the sale of defendant's lots over and above the amount claimed by plaintiff as the net prices for which he was to account to defendant."

These instructions are not qualified so as to apply alone to the case made by the petition, but they are drawn so as to apply to the defendant's cause of action stated in the counterclaim as well as to the cause of action stated in the petition. The pleadings present the issues on this matter of compensation as follows: Plaintiff in his petition avers that he was to have all the property sold for over the net plat prices. This averment is denied by the answer. For a further answer and counterclaim it is alleged that the plaintiff

agreed to sell the property for a commission of $1 per front foot, that he sold three thousand, nine hundred and twenty-five feet and became entitled to commissions to the amount of $3,925; that he collected $9,650 and only accounted for $4,489, leaving a balance due defendant of $1,235, and for which he asks judgment. These averments are denied by the reply. The obligation to prove any fact is upon the party who asserts the affirmative of the issue. As to this counterclaim the defendant asserted the affirmative, and the burden was upon him to show that by the agreement the plaintiff was to sell the property for a commission of $1 per front foot. Under the issues thus made the plaintiff could show as he did, that the contract was as alleged by him in his petition, and thereby defeat the counterclaim, but the burden of proof upon the counterclaim did not rest upon him. It rested upon the defendant. The instructions were, therefore, too broad and were properly refused.

6. The defendant in his counterclaim set up other matters to the following effect: That plaintiff fraudulently and "without the knowledge or consent of the defendant" took some six deeds of trust from as many persons, upon lots which plaintiff had sold and recorded them prior to the deeds of trust taken to secure the purchase price of the lots. To this the plaintiff replied that the deeds of trust were taken and made prior liens pursuant to the instructions of the defendant and "with his knowledge and consent," to enable such persons to raise money to build houses on the lots and thereby facilitate the sale of other lots. Evidence was produced in support of these issues on the one side and the other. The defendant asked the court to instruct the jury that plaintiff had no right to place building loans secured by first mortgages on lots sold by him, without the defendant's consent; "and if 'he

did so," he could not recover in this case. The court modified the instruction so as to make the quoted words read "and if he did so without the express or implied consent of defendant."

We do not see that there was any error in thus modifying the instruction. Consent being averred, it could be proved by direct evidence, or it could be inferred from the facts and circumstances in evidence. Nor was it necessary to tell the jury what facts proved consent. Whether the defendant consented to placing these prior liens on some of the lots was a fact to be proved like any other fact in the case, either by direct evidence or inferred from facts in evidence. A more elaborate instruction might have been given as to implied consent, but the defendant did not request further instructions on that point, and we can not say there was error in the instruction as modified and given. The real issues in this case were fairly and well presented to the jury, and the judgment should be affirmed. BARCLAY, J., absent. The other judges concur.