**V. D. HAYNES and Floyd Haynes, d/b/a Haynes Sales Company, Appellants,**

v.

**FALSTAFF BREWING CORPORATION, Appellee.**

**No. 16393.**

United States Court of Appeals
Eighth Circuit.

June 29, 1960.

---

418

Clem W. Fairchild, Kansas City, Mo., for appellant.

George C. Willson, St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH, and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

The federal jurisdiction in this case results from diversity of citizenship and amount involved. The action was brought after a wholesaler's contract between the plaintiffs and Griesedieck Bros. Brewery Company for the sale of the company's beer in St. Joseph, Missouri and vicinity had been cancelled by the brewery company. Under the original written contract, entered into on March 7, 1951, the brewery company agreed to sell its beer to plaintiffs with the right to plaintiffs to resell it within the described area and plaintiffs agreed "to actively solicit business" for the products within the area assigned to it. The agreement was continuing until cancelled by either party giving the other five days notice in writing. It recited that it constituted the entire agreement. After it had been in effect about four years on May 19, 1955, a second wholesaler's contract was signed by the parties substantially the same as the first except as to a change in the territory.

In December of 1957, after plaintiffs' wholesaler's contract which had then been carried on for nearly seven years was duly cancelled by the Griesedieck company following a merger of that company with the Falstaff Brewing Corporation, plaintiffs were notified that malted beverages under the brand name of Griesedieck Brothers or Griesedieck Bros. Brewing Company would no longer be produced. Plaintiffs then brought this action against the Falstaff Brewing Corporation which is liable for any debt shown to be owing to the plaintiffs by the Griesedieck company. Griesedieck's right to cancel the contract as it did is not questioned, but plaintiffs alleged in their complaint that in the course of performing their promise under the contract "to actively solicit business for malt beverages brewed and bottled by Griesedieck Bros. Brewery Company within [their] territory" the plaintiffs spent money "for advertising, the purchase of and installation of signs, the painting of a truck, payment of salary to a public relations man, purchase from taverns and other customers, leases on outside signs and other items; and to further promote the sale of said products purchased malt beverages from the maker and gave them to various people and organizations" all "in the anticipation of the continuance of the contract and the profits to be made in the future." That by reason of the merger and termination of the contract by Griesedieck the plaintiffs will be unable to recoup their expenditures and they prayed judgment on account thereof in the sum of twenty-five thousand dollars and costs.

The defendant joined issues by answer and counter-claimed for $4,538.96 for products of the Brewery sold to plaintiffs for which plaintiffs admitted defendant was entitled to judgment. On the trial of the case to the court, judgment was entered denying recovery to the plaintiffs and awarding recovery to defendant in the amount of its counterclaim. Although plaintiffs filed notice of appeal

from the entire judgment, they have not contested the judgment on the counter-claim and it is affirmed.

The court filed a memorandum opinion (not reported) which it adopted as its findings of fact and conclusions of law. It described the wholesaler's contract and the cancellation by the Brewery and found that during the period of the franchise the plaintiffs spent money in promotion of the Griesedieck products, and that Griesedieck suggested, urged, and requested that plaintiffs spend money on such promotion. The Court said, "In fact, in the sale of any malt beverages, promotion is a necessary item," and according to the evidence "The promotional expenses [incurred by plaintiffs] were usual expenses in the course of operating a beer distributorship." Plaintiffs were already in business as beer distributors and provided with equipment when they contracted with Griesedieck. The Court also found that the plaintiffs had operated at a loss every year covered by their contracts except in the year 1954. In that year they showed a profit of $874.84, but "thereafter their sales dwindled and they lost money." Up until 1956 the Brewery advertised by broadcasting the St. Louis Cardinal baseball games but they lost that broadcasting and in that year the plaintiffs told the Brewery that they would not continue their advertising and promotion on the scale they had in the past. After 1954 their promotion efforts decreased.

The Court observed that Missouri law governed in the case and upon analysis of Beebe v. Columbia Axle Co., 233 Mo. 212, 117 S.W.2d 624; Terre Haute Brewing Company, Inc. v. Dugan, 8 Cir., 102 F.2d 425; Meyer v. Pulitzer Publishing Co., 156 Mo.App. 170, 136 S.W. 5; and Glover v. Henderson, 120 Mo. 367, 25 S.W. 175, relied on by plaintiffs, it concluded that "the theory upon which [the cases] were decided can well be summarized by the statement of the court in the Beebe case, supra, 117 S.W.2d loc. cit. 629:

" 'The limitation is that, in any case of an indefinite agency where it is revoked by the principal, if it appears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principle acted upon by the courts in the circumstances suggested requires no more than that, in every instance, the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly.' "

Having considered the evidence and examined the cases, the Court stated that "the question for the Court to determine is whether or not under the facts in the case at bar the plaintiffs had a sufficient opportunity to recoup expenses incurred in good faith in promoting the products of Griesedieck." The Court decided the question in the affirmative and on the appeal the contention is in substance that the decision was contrary to Missouri law and erroneous because the parties "recognized" and the "sole evidence" established that it would take seven years for such recoupment and as the contract was cancelled some two months and nine days short of that period the plaintiffs were entitled to recover their outlay.

Appellants' reliance is mainly upon the following testimony of one of the plaintiff partners:

"Q. Had Griesedieck beer previously been promoted in the St. Joseph area? A. It had.

"Q. Had the previous distributors been successful? A. No, sir.

"Q. Was that the reason that you were able to obtain the franchise? A. Yes, sir.

"Q. At the outset, was there any contact with personal representatives of the Griesedieck Brewery and you in regard to the success of this venture? A. Yes, sir.

"Q. Did you form any opinion at that time through the representations made to you or otherwise as to how long it would take you to make your partnership successful and get on a paying basis? A. Yes, sir.

"Q. What was the decision that you arrived at in that regard? A. That it would take at least seven years in order to build that brand in that market.

"Q. Now, were there certain factors in the St. Joseph area that made that time stretch out to seven years? A. Yes, sir.

"Q. What were those factors? A. Goetz Brewery, which was located in St. Joseph, Missouri.

"Q. Does it have a lot of employees that live in the St. Joseph area? A. Yes, sir.

"Q. Are there any other factors that entered into that? A. Well, the brewery, as I said before, was there, and—

"Q. That is a home-owned brewery is it? A. Yes, it is a home-owned brewery and the retailers in the St. Joseph market, Goetz has helped a lot of those retailers, that is in the beer business there, over a period of years, and through different civic affairs Goetz has impressed upon the public, not just merely beer drinkers, but the public as a whole, in St. Joseph that it is a home-owned institution and its means something in St. Joseph.

"Q. Is Goetz beer and Griesedieck beer, was it competitive in price and hit the same type of market? A. At the retail level.

"Q. Now, is there any other brewery in St. Joseph? A. No, sir.

"Q. What brands were you competing with when you took on this Griesedieck Brothers franchise? A. Falstaff, Goetz.

"Q. Was Falstaff a well-established brand in the St. Joseph area? A. Yes, sir.

"Q. How long had they been in St. Joe with a fully developed distributorship? A. Since prohibition had been repealed.

"Q. Did you point out these facts to the representative of Griesedieck Brothers when you discussed initially the promotional program? A. Yes, sir.

"Q. Did the series of factors that you were confronted with enter into the promotional program that he outlined for you? A. Will you repeat that, Mr. Fairchild?

"Q. Did these facts that you pointed out to him that you were confronted with enter into the program that he outlined for you to promote Griesedieck? A. Yes, sir.

"Q. What did he tell you? A. He said that Rome wasn't built in a day and it would take us at least *seven years to build this label to* whereby we could enjoy a profit off of it."

We do not find appellants' contention to be meritorious. There was no contract between Griesedieck and plaintiffs that Griesedieck would continue to supply its beer for distribution by plaintiffs for seven years or any other fixed term. On the contrary, the contract, declared to be the entire contract, not subject to be changed by any representative of Griesedieck other than one of its officers, gave Griesedieck the right to cancel it at any time on five days notice.

It was in connection with that contract that the issue arose in the case whether plaintiffs had reasonable opportunity for recoupment. The Missouri decisions under which plaintiffs sought recovery do not undertake to define all the elements which constitute affording reasonable opportunity. They leave the issue to the

trier of facts to be determined from all the pertinent evidence like other fact questions turning on reasonableness.

The Court did not exclude the above quoted expressions of opinion about the "time it would take" plaintiff "to build that brand" or "build this label." But as the testimony amounts to no more than a guess hazarded on speculative assumption that plaintiffs would be successfully engaged in building up a profitable business, it manifestly threw very little light on the controlling question. In arriving at decision, the Court took into consideration the whole course of the business carried on by plaintiffs under the contract, and in view of the facts that plaintiffs' efforts were unsuccessful throughout nearly the whole period of almost seven years in which they were engaged and that during the last three years they continued to lose money, their sales were dwindling, and their promotion efforts decreased, it can not be held that the Court's finding in the affirmative on the controlling question was clearly erroneous. On the contrary, there is nothing to indicate that plaintiffs would have benefited by a few months extension of their contract or that their failure to make expenses resulted from denial of reasonable opportunity by Griesedieck. The failure was plainly attributable to their inability or failure to carry their undertaking on successfully.

The case was submitted to the Court without a jury and we hold that the Court reached a permissible conclusion as to Missouri law and its finding on the fact issue was not clearly erroneous.

Affirmed.