(October 29, 1909.)

## WALTER S. GASKILL, Respondent, v. WASHINGTON WATER POWER CO., Appellant.

[105 Pac. 51.]

DAMAGES—FLOODING LAND—DEFENSES WAIVED—INVITED ERRORS.

1. Where an action is brought to recover damages for loss of hay crop caused by flooding plaintiff's land, and an injunction prayed for to prevent a repetition of such flooding, and the defendant by its answer sets up several separate defenses, and when the case is called for trial moves to have the court refer the cause to a master in chancery to determine the measure of damages that plaintiff would be entitled to, as if the defendant were condemning the right to flood and overflow the plaintiff's land permanently and perpetually, and such reference is made over the objection of the plaintiff, and the cause is tried by the referee and his finding and decision reported to the court, and the court enters judgment thereon and in accordance therewith, on an appeal therefrom the defendant will not be permitted to take advantage of the error made by the court in referring the case to a referee, for the reason that it invited the court to make the error.

2. The parties to an action must act consistently, and they will not be heard on appeal to complain of errors made by the trial court which they themselves invited and procured the court to make.

3. *Held,* that the defendant invited the error made by the court and thereby changed the theory upon which the action was brought and turned it into a condemnation proceeding, and thereby waived the special defenses pleaded in its answer.

4. The evidence held sufficient to sustain the judgment.

(Syllabus by the court.)

APPEAL from the District Court of the Eighth Judicial District, for the County of Kootenai.  Hon. W. W. Woods, Judge.

Action to recover damages for flooding plaintiff's land. Changed at the request of the defendant to a condemnation suit.  Judgment for plaintiff.  *Affirmed.*

George Turner, H. M. Stephens, Gray & Knight, and Wm. K. Shissler, for Appellant.

Final judgment cannot be rendered in a cause until the case has been brought to issue, and the plaintiff and defend-

ant have had their day in court upon all the issues raised. (*Kennard v. Louisiana*, 92 U. S. 480, 23 L. ed. 478; *Hagar v. Reclamation Dist.*, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; *Pennoyer v. Neff*, 95 U. S. 714, 24 L. ed. 565; *Simon v. Craft*, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. ed. 1165; *Hovey v. Elliott*, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. ed. 215.) Even where the case has been brought to issue, a failure of the trial court to find on all the material issues necessary to the judgment will necessitate a reversal. (*Uhrlaub v. McMahon*, 15 Ida. 346, 97 Pac. 784; *Brown v. Macey*, 13 Ida. 451, 90 Pac. 339; *Carson v. Thews*, 2 Ida. 176, 9 Pac. 605; *Wilson v. Wilson*, 6 Ida. 597, 57 Pac. 708; *Standley v. Flint*, 10 Ida. 629, 79 Pac. 815; *State v. Baird*, 13 Ida. 126, 89 Pac. 298; *Later v. Haywood*, 14 Ida. 45, 93 Pac. 374; *Bowman v. Ayers*, 2 Ida. 305, 13 Pac. 346; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Hihn v. Peck*, 30 Cal. 286; *Christy v. Spring Valley Waterworks*, 84 Cal. 541, 24 Pac. 307.)

Kerns & Ryan, for Respondent.

The parties to a suit must act consistently, and they will not be heard to complain of errors which they have themselves committed, or have induced the trial court to commit. (*Walton v. Chicago etc. Ry. Co.*, 56 Fed. 1006, 6 C. C. A. 223; *Long v. Fox*, 100 Ill. 43-50; *Noble v. Blount*, 77 Mo. 235; 3 Cent. Dig. 3591.)

SULLIVAN, C. J.—This action was brought to recover the value of a crop of hay grown on the lands of the plaintiff, which crop of hay, it is alleged, of the value of $480, was destroyed by the defendant's overflowing the land of the plaintiff, and to obtain a temporary restraining order during the pendency of the cause and for a permanent injunction thereafter.

It is alleged in the complaint that the defendant is a corporation organized and existing under and by virtue of the laws of the state of Washington; that in 1899 the plaintiff settled upon a part of the public domain under the home-

stead laws of the United States and thereafter procured a patent to said land from the United States; that said land is situated adjacent to the Coeur d'Alene river, which river empties into the Coeur d'Alene lake; that defendant, prior to the month of July, 1907, constructed a dam across Spokane river at Post Falls in Kootenai county, which river is the outlet of Coeur d'Alene lake, and that said dam was so constructed as to control and obstruct the natural flow of the waters from said lake; that in the month of July, 1907, the waters of said lake were so obstructed by means of said dam as to cause the water in said lake to rise and flow backward up the Coeur d'Alene river and overflow about forty acres of the meadow land of the plaintiff, upon which land a crop of hay had grown and matured, thereby totally destroying said crop of hay to the injury and damage of the plaintiff in the sum of $480; that said dam is of a permanent character and so arranged as to cause the water of Coeur d'Alene lake and Coeur d'Alene river to rise to such an extent as to overflow said forty acre tract of land; and that unless said defendant is restrained and enjoined by the court, it will obstruct the natural drainage of said lake during the following years so as to cause said land of plaintiff to be annually overflowed, and thus destroy the growing crops of plaintiff thereon.

An answer was filed by the defendant denying the most of the material allegations of the complaint and setting up as an affirmative defense that it had constructed · a new dam in the Spokane river at Post Falls, with a mechanical contrivance known as a "bear-trap," whereby in periods of low water the crest of the dam was raised —— feet above its ordinary level and made to slightly retard the flow of the waters of Lake Coeur d'Alene and of the river; that it owns the land at Post Falls, and that it is engaged in generating electrical power by means of said dam, bear-trap and falls, and selling such electrical power to certain inhabitants of Idaho as well as to the city of Spokane and other parties; that it has made certain contracts to furnish such power, and without using said bear-trap it cannot comply with

said contract; that the bear-trap, when raised, will not raise the water of the river and lake to high-water mark or to a point which will overflow or in any manner disturb the lands of plaintiff; that it commenced the construction of said dam in 1904 and finished the same in 1907; that sometime during the year 1907, the respondent verbally agreed with appellant, by way of compromise of his claim against appellant for overflowing said land, to accept $20 per acre for the land overflowed by means of said bear-trap, and that appellant in reliance upon that agreement, at an expense of more than $40,000, thereafter purchased of other owners of lands along said river, similarly situated, overflow rights on their said lands amounting to more than 2,000 acres, and that respondent is barred of relief by his laches and the statute of limitations.

As another and separate defense, the defendant averred that it constructed said dam, and it was designed and intended to hold and control the flow of the waters of Coeur d'Alene lake and its tributary waters in order that the same might be conserved and flow off gradually as the interests of the defendant for power might require; that plaintiff's land and most of the land of the valley of the Coeur d'Alene river is subject to annual overflow, which covers the land from the early months of spring until about the middle of July each year, rendering the land useful only for grass that grows thereon after the overflow waters recede; that notwithstanding it is advised and believes it has the legal right to overflow the land by means of its dams and works, by reason of the inferior character of the land which would be overflowed, it has endeavored to buy its peace amicably from all persons claiming to have land overflowed, including the plaintiff in this suit, by offering to them the full value of their land; that it offered to pay plaintiff $20 per acre for all land of his overflowed, and has settled and executed overflow rights from a large number of other land owners. The answer of appellant is a plea that it has a right to overflow said land, and that plaintiff has no legal right to recover any damages from it.

Upon said pleadings and some affidavits, the respondent's motion for a preliminary restraining order came on to be heard on August 3, 1908, at which time the defendant requested the judge to make and enter the following order:

"It is further ordered that ——— be and he is hereby appointed as master in chancery and referee to take and hear testimony of and concerning the issues involved herein as to the extent of plaintiff's property overflowed by reason of defendant's dams and the value of said property at the time of the overflow thereof in the year 1907, and find and assess the damages that plaintiff is entitled to, that is, the same damage and measure of damages that plaintiff would be entitled to if defendant was condemning the right to flood and overflow plaintiff's land permanently and perpetually.

"It is further ordered that the expense of taking testimony by said master in chancery and referee shall be the same as if defendant was condemning.

"It is further ordered that if the defendant shall pay into court the sum and costs fixed by the master and referee, within thirty days after notified of the amount thereof by the master and referee, no injunction will issue, but if said defendant shall fail, neglect or refuse so to do, it will be enjoined and restrained from flooding or overflowing plaintiff's land.

"It is further ordered that the defendant shall not be prejudiced by said payment into court, and that it shall not thereby be prevented from further taking or prosecuting any appropriate action or proceeding relating to any question involved in this action.

"It is further ordered that either party may cause the issues covered by this order to be brought on for hearing upon serving ten days' written notice on the opposite party, designating the time of such hearing, and unless otherwise ordered by the master in chancery and referee, for good or reasonable cause, the taking of testimony shall be continuous (from day to day) until completed, and be at Coeur d'Alene, Idaho, unless some other place shall be agreed upon between

the parties and said agreement approved by the master in chancery and referee. The master in chancery and referee may adjourn or continue the taking of testimony from time to time as the convenience of the master in chancery and referee or the counsel or witnesses may require, said master in chancery and referee being expected to exercise a sound discretion in the premises.

"The taking of testimony shall and must be completed within six months from the date thereof (unless such time be extended by the judge of this court) and the master in chancery and referee shall make and file his findings and conclusions and report within ninety days after the expiration of said six months within which evidence may be taken.

"Done at chambers this —— day of July, A. D. 1908.

"_____,

"Judge."

The court, after modifying the third paragraph of said requested order, made the order of reference. The third paragraph of said order was modified to read as follows:

"It is further ordered that the defendant shall pay into the court the sum and costs fixed by the master in chancery and referee, within thirty days after notified of the amount thereof by the master and referee, to be subject to the order of the court."

The only change as made was that the sum so paid in should be subject to the order of the court, and leaving out the provision that in case defendant failed, neglected or refused to pay said sum into court, it should be restrained and enjoined from flooding said land.

The respondent excepted to this order on the ground that the court had no jurisdiction to order a reference or change the issues of the case or take away from respondent his right to a trial by jury. On August 10, 1908, appellant served notice on respondent requiring respondent, pursuant to said order of reference, to appear before the master on the 24th of August, 1908, and submit evidence in conformity with the order. The respondent appeared at the time

noticed and again renewed his objection to the jurisdiction of the master, on the ground that the court had no jurisdiction to order a reference or change the issues in the case or to deprive the respondent of a jury trial, and that the answer did not state facts sufficient to entitle the appellant to condemn the lands of the respondent, and on August 26, under protest of counsel for respondent, the trial proceeded before the master, and evidence was introduced by the respondent in support of the allegations of his complaint and in support of the issues framed by the order of August 3d, referring the cause. A large number of witnesses were examined on behalf of the parties. Both parties having introduced all the evidence they desired, the master took the case under advisement and thereafter on November 18, 1908, made his findings of fact and conclusions of law, awarding to the respondent $1,600 for the permanent overflow of 34½ acres of said land, and $750 damages, resulting injury to other lands, and $202.85 for the hay crop of 1907, alleged to have been destroyed—a total of $2,552.85 besides costs.

On October 1st, and after the submission of the cause, the appellant procured an order from the judge of the district court permitting it to amend its answer by inserting at the end of paragraph 3 of page 20 of the answer and before the prayer, an additional allegation, as follows:

"That the defendant is now and at all of the times herein mentioned has been a corporation organized and existing under and by virtue of the laws of the State of Washington, and is now and at all of the times herein mentioned has been authorized to hold real property and to do business within the state of Idaho by virtue of a compliance with the laws of the state of Idaho relating to foreign corporations. That heretofore and before the filing of this suit the defendant complied with all the laws of the state of Idaho relating to foreign corporations, and did file a certified copy of its articles of incorporation with the recorder of Shoshone county and a certified copy thereof with the secretary of state of the state of Idaho, and designated a statu-

tory agent residing at Wallace, Shoshone county, Idaho, upon whom papers and process could be served, and filed the said designation in the proper offices as required by corporations.

"That the defendant has power, among other things, under its articles of incorporation to erect, construct, maintain and operate electric railways, electric power and transmission lines and to do all things necessary and incident thereto, including the right and power of eminent domain. That under the laws of the state of Idaho and the articles of incorporation which have been filed as aforesaid in the state of Idaho, defendant has the right and power of eminent domain and the right and power to condemn the lands of plaintiff herein and the perpetual right to flood and overflow the same and back and overflow water thereupon and thereover."

Within thirty days after the findings of the master, the appellant deposited with the clerk of the court the amount of the award and costs, and thereafter, on December 28th, the respondent filed his acceptance of the award and made a motion for an order directing the clerk to pay over the money, both parties appearing, and at the same time the appellant filed its motion for leave to withdraw the funds theretofore deposited in court. All parties appearing before the court, on December 28th an order was made shortening the time of notice and fixing the date of final hearing for December 31, 1908, and on that date all parties appearing before the court, the respondent filed a supplemental acceptance of the award and accompanied the same by a deed in writing, duly executed and acknowledged by respondent, conveying to the appellant a perpetual easement to back and overflow with water said thirty-four and one-half acres of land, and delivered said deed to the clerk of the court for the use and benefit of appellant upon its payment to the respondent of the award of the damages, which deed was at that time deposited with the judge of the court. On December 31st, the case was finally submitted and by the court taken under advisement, and thereafter, on March 13, 1909, final judgment was entered confirming the report of

the master and denying the application of appellant to withdraw the fund and granting the application of respondent for an order directing the payment to him of the amount deposited and directing the respondent to make, execute, acknowledge and deliver a good and sufficient deed for the lands sought to be overflowed, granting to the appellant in perpetuity the right to overflow said land. Thereupon the appellant moved for a new trial, which motion was denied. This appeal is from the judgment and order denying the motion for a new trial.

At the time of taking the testimony before the master, the case was at issue on the complaint and answer. The respondent did not demur to the answer until after said amendment ·was allowed on October 1, 1908. The hearing before the master was concluded September 1, 1908.

It will be observed from the foregoing statement of facts that the action was brought to recover damages for destruction of a crop of hay by the overflowing of plaintiff's land and for an injunction. The answer denied the allegations of the complaint and set up as a defense that the appellant and the plaintiff had entered into an agreement whereby the appellant had agreed to pay the respondent $20 per acre for a perpetual right to flood said lands, and as a further defense averred that its grantors and predecessors in interest had the right to perpetually flood said lands, and that it procured said right by grant from them. After the issues had been made up, on the application of appellant, it appears that the theory of the case was entirely changed from one of damage and injunction by the plaintiff to one of condemnation by defendant, and referred to a master to take the evidence upon the theory of condemnation and to report his findings and conclusions.

If the defendant had intended to stand on its other defenses, there certainly was no need of having the case referred to a referee to ascertain the damages to be awarded for the flooding of said land, and the order requested and prepared by counsel for appellant, and also the order made by the court, provides for the appointment of a master to

take testimony as to the extent of plaintiff's land overflowed
by reason of defendant's dams and the value of said land
at the time of the overflow in 1907, and to find and assess
the damages that plaintiff is entitled to, "That is, the same
damage and measure of damages that plaintiff would be
entitled to if defendant was condemning the right to flood
and overflow plaintiff's land permanently and perpetually."
The only party objecting to the order made was the re-
spondent, and it is contended that the court made said order
upon the authority of *New York City v. Pine,* 185 U. S. 93,
22 Sup. Ct. 592, 46 L. ed. 820, and *Pappenheim v. Metro-
politan Elevated Ry. Co.,* 128 N. Y. 436, 26 Am. St. 486,
28 N. E. 518, 13 L. R. A. 401. In our view of the case,
it matters not upon what authority the court made said
reference. The reference was made at the instance and
request of the appellant, and it was for the purpose of
ascertaining the number of acres of land overflowed, and to
determine the damages that plaintiff was entitled to recover
according to the rule and measure of damages in condem-
nation proceedings. The court was evidently misled by coun-
sel for appellant, and instead of proceeding upon the theory
on which the case was begun and the pleadings framed,
proceeded upon the theory that it was an action for con-
demnation. This was clearly error and the plaintiff by it
was prevented from having a jury trial in his action to
recover damages for the loss of his hay crop. However,
by the acceptance of the award, the respondent has waived
the error and has not appealed from the judgment. The
error having been brought about at the request of the ap-
pellant, it does not now occupy a position to have the case
reversed for the reason that it procured the court to make
the error; it invited the error. A party will not be heard
to complain in this court of an error which was committed
by the trial court at his instance and request. The court
said in *Walton v. Chicago, St. P. etc. Ry. Co.,* 56 Fed.
1006, 6 C. C. A. 223, as follows:

"It is a well-established doctrine that the parties to a
suit must act consistently, and that they will not be heard

to complain of errors which they have themselves committed, or have induced a trial court to commit.''

This court held in *Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist.,* 14 Ida. 450, 94 Pac. 762, that one who invites error will not be allowed a reversal of the judgment on that account, and in support of that rule cited 3 Cyc. 242; *Borden v. Croak,* 131 Ill. 68, 19 Am. St. 23, 22 N. E. 793; *Gumaer v. Draper,* 33 Colo. 122, 79 Pac. 1040; *Aaron v. Jones* (Utah), 99 Pac. 450.

While the reference was not made exactly in accordance with the request of counsel for appellant, so far as the detail of the reference was concerned, it was made exactly in accordance with such request as to the issues to be tried by the referee, which issues were entirely inconsistent with the special defenses attempted to be set up by the answer. The court made an error without any law whatever in its support when it deprived the respondent of the right to trial by jury of his action for damages to his hay crop, and this error was invited and made at the request of counsel for appellant and it was such an error as clearly indicated the waiver by the appellant of the special defenses pleaded in its answer. That being true, the appeal must be disposed of by this court on the theory that the case was tried by the trial court at the invitation and request of the appellant as a condemnation case without a jury. The appellant must be held to have waived each and every of the special defenses pleaded.

We think the evidence is amply sufficient to sustain the judgment.

In the view we take of this case, it is not necessary for us to pass upon or determine any other of the errors assigned. The judgment must be affirmed, and it is so ordered, with costs in favor of respondent.

Stewart and Ailshie, JJ., concur.

Oct. 1909.]    GASKILL *v.* WASHINGTON WATER POWER CO.    139

Opinion of the Court—Ailshie, J., on Petition for Rehearing.

### ON PETITION FOR REHEARING.
#### (November 24, 1909.)

AILSHIE, J.—Appellant has filed a petition for a rehearing, and insists that the court has invoked against it the rule of waiver and invited error, under a misapprehension of the full extent of the order appellant requested the trial court to make in this case. This contention seems to be made chiefly upon the following statement contained in the original opinion: "The only change as made was that the sum so paid in should be subject to the order of the court, and leaving out the provision that in case the defendant failed, neglected, or refused to pay said sum into court he should be restrained and enjoined from flooding said land." It appears, however, that in fact the order made by the trial court also omitted the fourth paragraph from the requested order. That paragraph reads as follows:

"It is further ordered that the defendant shall not be prejudiced by said payment into court and that it shall not thereby be prevented from further taking or prosecuting any appropriate action or proceeding relating to any question involved in this action."

That provision of the order was considered by the court, but no mention was made of it in the written opinion. The only theory upon which that provision could have any bearing or effect would be in event it should receive the construction that, even though this reference should be made, it should have no effect if it proved unsatisfactory to the defendant in the action, and that defendant might take any other action it saw fit to take in the case or in reference to the matter in controversy, however inconsistent it might be with the reference requested. While this paragraph of the order is capable of such a construction, the court is not going to give it a construction that would be inconsistent with good faith on the part of the litigant who requested the order. To give it such a construction would be in effect saying that the appellant was trifling with the court in submitting such an order and asking such a conditional reference.

While the proceeding in this case is open to that construction and might subject appellant to the charge that it was endeavoring to take a short cut to condemn respondent's land and also avoid submitting the question of damages to a jury, and at the same time reserve all legal and technical defenses that it might have as to the validity and extent of respondent's title and right of possession and occupancy, still we are inclined to give it the construction that the appellant was at the time acting in good faith.

A proceeding in condemnation is an admission of ownership of the property and right sought in the person against whom the condemnation is prosecuted. Condemnation was accordingly in conflict and inconsistent with the defense set up by appellant that it had already acquired from Frederick W. Post, by and with the consent of the United States government, the right to perpetually flood this land. If it had such right, then respondent had nothing to condemn. Appellant clearly and unmistakably led the court into the procedure adopted in this case and the theory of condemnation as embodied in this order. After it had invoked this procedure and converted the respondent's action for damages and injunction into an action in condemnation on the part of the appellant, and after the evidence had all been taken by the referee, and a report had been made, and the money had been paid into court, the court then properly refused to allow defendant to withdraw the payment and proceed upon another theory of the case that it had impliedly waived in the first instance.

If the appellant has been deprived of any of its property or property rights in this case, it has been done by its own initiation. It impliedly waived the defense it now urges and should not be heard at this time to change its theory of the case. We have examined the evidence in the record for the purpose of ascertaining if it is sufficient to support the finding of the referee and judgment of the court in awarding damages. We think the evidence is abundantly sufficient to support the judgment in that respect, and so held in the original opinion. The petition is denied.

Sullivan, C. J., and Stewart, J., concur.