(November 17, 1923.)

HARRY L. POWERS, Respondent, v. SECURITY SAVINGS & TRUST COMPANY, a Corporation, Appellant.

[222 Pac. 779.]

Agency — Real Estate Brokers — Contract—Exclusive Right to Sell—Breach of Contract by Principal—Bulk Sales—Scope of Agent's Authority—Pleading—Amendments—Appeal and Error—Instructions.

1. Propositions to amend a pleading, during the trial of a cause, are addressed to the sound discretion of the trial court.

2. Where the trial court, because of the allowance of an amendment at the trial, indicated a willingness to grant a continuance, appellant cannot take chances on the result of the trial and lose, and then be heard to complain of the action of the trial court in allowing the amendment.

3. This court will not disturb a judgment because of the alleged error of the trial court in submitting to the jury the determination of whether the contract granted respondent the exclusive right to sell the lands, where such alleged error was committed at the instance of appellant.

4. In an action by a real estate broker against the owner of lands listed for sale for a definite period, the broker is en-

---

Publisher's Note.

4. Whether broker's right to make sale of property is exclusive of the owner's right, see notes in 9 Ann. Cas. 438; Ann. Cas. 1913D, 821; 24 L. R. A., N. S., 279; 40 L. R. A., N. S., 1142.

Liability of owner upon revoking authority of broker employed for definite time, see notes in 38 L. R. A., N. S., 366; L. R. A. 1918D, 731.

Effect of making agency of broker exclusive to exclude right of sale by owner, see notes in 10 A. L. R. 816; 20 A. L. R. 1270.

titled to damages for the breach of the contract upon a sale of the lands by the owner directly, or through another agent, prior to the expiration of the time granted the agent to sell the lands, where the broker is not only required to spend, and has spent, labor and money in advertising the lands for sale and in establishing and maintaining an office for such purpose, but where the broker has agreed to sell all the lands described in the contract during the term thereof.

5. Under a contract between the owner of lands and a real estate broker, in which the broker binds himself to sell all the land within three years and to expend time and money in so doing, the broker does not waive his right to damages for the breach of the contract, upon a sale of all the lands by the owner within the period of the contract, by urging that all the lands be sold in bulk with other lands, the broker having received a commission upon an earlier similar bulk sale.

6. An agent will not be heard to urge that it acted beyond the scope of its authority in entering into a contract with a real estate broker which granted to the broker the exclusive right to sell lands, where the complaint alleged and the answer admitted the agent's authority to enter into the contract.

7. A trial court does not commit error in refusing to give a requested instruction where there is no evidence to sustain the theory upon which the instruction was based.

APPEAL from the District Court of the Tenth Judicial District, for Nez Perce County. Hon. Wallace N. Scales, Judge.

Action for damages for breach of contract of agency for sale of real property. Judgment for plaintiff. *Affirmed.*

Frank L. Moore and I. N. Smith, for Appellant.

No contract by the owner or his agent, for the sale of the owners' land, can exclude the owner from selling his own property unless the contract expressly so provides. (4 R. C. L., pp. 259, 260, sec. 12; 2 C. J. 776, 777, notes 47, 48, 49; 2 C. J. 756 and cases.)

The following requirements of the contract specifying Powers' duties are not sufficient to make his contract exclusive: (a) That Powers should maintain his office at his own expense and advertise and prosecute the sale actively.

*Chambers v. Seay,* 73 Ala. 372; *Cronin v. American Securities Co.,* 163 Ala. 533, 136 Am. St. 88 and note, 50 So. 915.)

(b) The time limitation for performance of the contract. (4 R. C. L., p. 259, sec. 12; *Bonar v. Bunn* (Tex. Civ.), 158 S. W. 1186; *Moore v. May,* 10 Ga. App. 198, 73 S. E. 29; *Crawford v. Cicotte,* 186 Mich. 269, 152 N. W. 1065; *Head-Berry Co. v. Bannister,* 52 Okl. 763, 153 Pac. 669.)

The owner had the right to sell his own land to his own customer, although the property was listed with an agent for sale. (*Spotswood v. Morris,* 12 Ida. 360, 85 Pac. 1094, 6 L. R. A., N. S., 665.)

The third cause of action as amended does not allege, nor do the facts show that the No. 3 Bondholders themselves ever divested themselves of the power to sell their own lands or that they ever gave the Security Savings & Trust Co. an exclusive right of sale or the power to delegate such exclusive right of sale, either with or without the consent of the committee of three. (*Lord v. Wapato Irr. Co.,* 81 Wash. 561, 142 Pac. 1172, at 1179; 2 C. J. 685; 1 Am. & Eng. Ency. of Law, 2d ed., 971; *Quist v. Goodfellow,* 99 Minn. 509, 9 Ann. Cas. 431, 110 N. W. 65, 8 L. R. A., N. S., 153.)

Eugene A. Cox and Noel B. Martin, for Respondent.

Where the contract is for a fixed time, binds the agent absolutely to sell the land within the time limited, requires the agent to spend time and money to carry it out, and is accepted by the agent, who fulfils the duties imposed thereby, and spends time and money fulfiling the contract, the principal lacks the right to terminate the contract, without liability to the agent. (*Hunter v. Wenatchee Land Co.,* 50 Wash. 438, 97 Pac. 494; *Levy v. Rothe,* 39 N. Y. Supp. 1057; *Elkhorn Consolidated C. & C. Co. v. Eaton Rhodes & Co.,* 163 Ky. 306, 173 S. W. 798; *Popplewell v. Buchanan* (Tex. Civ.), 204 S. W. 874; *Johnson & Moran v. Buchanan,* 54 Tex. Civ. 328, 116 S. W. 875; *Handley v. Shaffer,* 177 Ala. 636, 59 So. 286; *Weisels-Gerhart Real*

*Estate Co. v. Epstin,* 157 Mo. App. 101, 137 S. W. 326; *Maddox v. Harding,* 91 Neb. 292, 135 N. W. 1019; *O'Connell v. Casey,* 206 Mass. 520, 92 N. E. 804; *Paulsen v. Rourke,* 26 Colo. App. 488, 145 Pac. 711; *Hollweg v. Schaffer Brokerage Co.,* 197 Fed. 689, 117 C. C. A. 83; *Hardwick v. Marsh,* 96 Ark. 23, 130 S. W. 524; *Wright v. Beach,* 42 Mich. 869, 46 N. W. 673; *Rowan v. Hull,* 56 W. Va. 335, 104 Am. St. 998, 2 Ann. Cas. 884, 47 S. E. 92; *Attix Noyes & Co. v. Phelon,* 5 Iowa, 336; *Hoskins v. Fogg,* 60 N. H. 402; *Cloe v. Rogers,* 31 Okl. 255, 121 Pac. 201; *Lane v. Albright,* 49 Ind. 275; *McMillan v. Quincy,* 137 Ga. 63, 72 S. E. 506; *Donald v. Lawson,* 87 N. Y. Supp. 485; *Durkee v. Gunn,* 41 Kan. 496, 13 Am. St. 300, 21 Pac. 637; *McCray & Son v. Pfost,* 118 Mo. App. 672, 94 S. W. 998; *Miller v. Brown,* 115 Wash. 177, 196 Pac. 573; *Roth v. Moeller,* 185 Cal. 415, 197 Pac. 62.)

The fact that respondent, upon oral authorization, had been handling additional lands not included in his written contract would not estop him from relying upon his written contract. (*Miller v. Brown,* 115 Wash. 177, 196 Pac. 573.)

The parol evidence introduced as to the intent of the parties when the contract was executed, having been admitted upon the offer and insistence of appellant, is, if error at all, invited error of which appellant cannot complain. (*Parker v. Metropolitan St. Ry. Co.,* 140 Mo. App. 703, 126 S. W. 759; *Conlin v. Osbourn,* 161 Cal. 659, 120 Pac. 755; *McGillan v. Bennett,* 132 U. S. 445, 10 Sup. Ct. 122, 33 L. ed. 422, at 425; *Trask v. Boise King Placers Co.,* 26 Ida. 290, 142 Pac. 1073; *Nobach v. Scott,* 20 Ida. 558, 119 Pac. 295, *Mercer v. McPherson,* 70 Kan. 617, 79 Pac. 118; *Madera Ry. Co. v. Raymond Granite Co.,* 13 Cal. App. 668, 87 Pac. 27.)

The authority to make the contract was alleged in the complaint and admitted by the answer. Lack of authority of appellant to make the contract not being an issue below, will not be considered here. (*Miller v. Donovan,* 11 Ida. 545, 83 Pac. 608.)

WM. E. LEE, J.—Upon a foreclosure sale in the federal court, certain bondholders of the Lewiston Land & Water Company, Ltd., known as the No. 3 Bondholders, acquired title, in 1918, to some two thousand acres of land in what is known as Lewiston Orchards, part of the land being planted to orchards in small tracts. The bondholders desired to dispose of the land as soon as possible. Title was vested in appellant, and the bondholders authorized appellant to convey the land in accordance with the directions of a committee of three employed by the bondholders for that purpose. This committee consisted of John H. Hall, R. L. Sheppard and H. C. Campbell, all residents of Portland, Oregon. For several years prior to the foreclosure sale, respondent had been in charge of the sales of the same lands for the Lewiston Land & Water Company, and was familiar with the property. After appellant acquired title to the lands, respondent was employed to manage and care for the same, but for some time the committee itself undertook to dispose of the lands. Certain negotiations were entered into looking to an agreement under which respondent would undertake to sell the said realty, but some delay ensued before such an agreement was actually effected. There is evidence tending to prove that the reason for the delay was that appellant did not want to give respondent an exclusive right to sell the lands, and that respondent refused to enter into any contract to sell the lands other than one granting him an exclusive right to sell. At any rate, it was something like a year after appellant took title to the lands before the agreement was entered into, and during that time no lands of the No. 3 Bondholders were sold.

On March 25, 1919, appellant and respondent entered into a contract in writing relating to the sale of the lands. The contract was approved by the committee of the bondholders, and, in accordance with its terms, respondent opened an office in Lewiston and devoted himself to the sale of the real property. Respondent made sales aggregating five or six thousand dollars, and was paid a commission of

twenty per centum of the sale price. Soon after the contract was entered into, respondent interested White Bros. & Crum Company in the purchase of a large acreage of both orchard and nonorchard lands. Such a sale was finally made, and respondent took certain orchard lands as his commission. Shortly thereafter, respondent interested White Bros. & Crum Company in a further purchase of lands, and this concern made an offer of approximately $100,000 for the remainder of the holdings of the No. 3 Bondholders. Some time prior to the offer of White Bros. & Crum Company, respondent made some effort to interest one John Latta, of Portland, Oregon, and took him over the tracts and exhibited the lands to him. When appellant and the bondholders' committee were considering the offer of White Bros. & Crum Company for the sale of the remainder of the holdings of the bondholders, information came to appellant and the bondholders' committee that John Latta was interested, and appellant sold the remainder of its property to Mr. Latta without knowledge of respondent. Respondent thereafter demanded a commission upon the sale. Payment was refused, and this action was instituted. The cause was tried to the court and a jury, and a verdict rendered for respondent. A motion for judgment *non obstante veredicto* was made and denied. This appeal is from the judgment entered upon the verdict.

Respondent's complaint was originally predicated upon three causes of action, but, in pursuance of an order to elect, he chose to stand on his second and third causes of action. In the second cause of action, it was alleged that respondent procured John Latta as a purchaser of the lands described in the complaint at a price of $105,000, and that the lands were sold for that amount. It was also alleged that after the original contract was made, it was agreed that in lieu of a commission of twenty per centum on the sale of orchard lands, respondent should receive seven and one-half per centum of the sale price of the lands sold in bulk, and respondent asked for the sum of $7,875 as his commission on such sale. The third cause of action

alleged that appellant sold the lands to John Latta for $105,000; that respondent was at all times ready, able and willing to perform the contract; that the contract was valid and effective when the lands were sold; that respondent was entitled to recover seven and one-half per centum of the said sum of $105,000, to wit: the sum of $7,875; ''and that by reason of the matters and things herein alleged, plaintiff has been damaged in the sum aforesaid.'' In deference to the opinion of the court that there was insufficient evidence that respondent was the procuring cause of the sale to John Latta, recovery on the second cause of action was waived. At a later stage of the trial, at a time when appellant was permitted to amend its answer, respondent was permitted, over appellant's objection, to amend his third cause of action. This amendment was doubtless occasioned by respondent's failure to establish an agreement in writing under which he was entitled to recover seven and one-half per centum of the sale price of all the property included in the bulk sale to Latta. Under his amendment, respondent sought damages in the sum of $7,875 for the breach of the original contract.

Appellant insists that the third cause of action, as amended, constituted a departure from the grounds of the complaint as originally pleaded; that respondent was bound by the theory of his case; and that one cannot predicate a right of recovery upon a modified contract, and thereafter, upon failure to establish the modification, seek recovery on the original contract. In his amended third cause of action, respondent sought a recovery on the ground that the contract gave him the exclusive right to sell the lands described therein during a specified time, and that appellant sold the land within the time granted to respondent. The amendment did not result in a change of the parties; the subject of the action was the same; the action continued to be based upon a breach of the contract; and the amount of the damages claimed ($7,875) was the same, although the method of computing the damages sought was stricken. Great liberality is permitted in amendments to pleadings.

(C. S., sec. 6726.) Propositions to amend a pleading are addressed to the sound legal discretion of the trial court. In view of the amendment which resulted in the alleged change in the theory of the case, the court indicated a willingness to grant a continuance if desired by appellant. Appellant did not desire a continuance, but elected to proceed with the trial. Under the circumstances, we are of the opinion that the trial court did not abuse its discretion, and that appellant, having taken chances on the outcome of the trial and lost, should not now be heard to complain of the action of the trial court in allowing the amendment. (*Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 91; *Panhandle Lumber Co. v. Rancour,* 24 Ida. 603, 135 Pac. 558; *Fralick v. Mercer,* 27 Ida. 360, 148 Pac. 906; *Lorang v. Randall,* 27 Ida. 259, 148 Pac. 468.)

In order for respondent to maintain his judgment, it must be held that the contract gave him the exclusive right to sell the land described therein. The contract did not denominate itself an exclusive contract, and it is necessary to look to its substance to determine its effect. The contract described the land to be sold, and specified the price per acre for which sales should be made. Respondent undertook and agreed to sell not less than $50,000 worth of the land during the first year, $100,000 worth during the second year, and all the remainder of the land during the third year. The contract further provided that respondent should open and maintain an office in Lewiston, advertise the land, and prosecute sales actively, all at his own expense. There was evidence to the effect that for a year prior to the execution of this contract, appellant had refused to enter into a contract with respondent giving him an exclusive right to sell the lands, and that during such period respondent refused to enter into any contract with appellant that did not give him the exclusive right to sell the lands. There was also evidence to the effect that the failure of the company that formerly owned this land had destroyed the market for such lands, and that it was necessary, in order to sell them, to advertise extensively and thereby create a

market for their sale; and that the contract finally entered into contemplated the advertisement of the lands for sale and the creation of a market therefor. Plaintiff alleged in his complaint that the contract gave him an exclusive right to sell the lands described therein. This was denied by appellant, and in the trial of the case, appellant took the position that the contract was not exclusive, while the opposite position was taken by respondent. At the outset of the trial, appellant claimed that the contract was unambiguous; that the parties had reduced to writing all the terms of the contract; and that parol evidence was inadmissible to vary its terms or to explain the circumstances under which it was made. This contention was fully sustained by the court. During the progress of the trial, the court ruled a number of times that the contract gave respondent the exclusive right to sell the orchard lands. Questions, the purpose of which was to elicit evidence as to the intention of the parties and to establish the contention of appellant that the contract did not give respondent an exclusive right to sell, continued to be propounded by appellant, and lengthy and protracted discussion was indulged in by the court and the attorneys. Appellant made the following offer:

"Mr. Smith: Then I will offer to prove by the witness on the stand the circumstances surrounding the execution of his contract to show that it was at that time distinctly understood that the owners of these lands, and the Security Savings & Trust Company and the committee reserved the right of sale and did not make an exclusive contract."

The offer was rejected. Subsequently, in the absence of objection by respondent, appellant was permitted to introduce oral evidence to explain the intention of appellant in entering into the contract, and to show the construction placed thereon by appellant. Because of the explicit statement by respondent that he would not object to such evidence, the court expressly stated that he would admit it, and from that time on, both parties put in evidence relating to the intention of the parties in making the contract, and

as to whether or not it was their understanding that the contract gave to respondent an exclusive right to sell the land described therein. The court instructed the jury that the question of the exclusiveness of the contract was in dispute, and was for the jury to determine. Appellant now contends that the court committed reversible error in submitting the question of the exclusiveness of the contract to the jury. The court, as above stated, had, on a number of occasions, held that the contract was exclusive, and but for the fact that appellant insisted that the contract was not exclusive, and that respondent withheld his objection, evidence relating to the exclusiveness of the contract would not have gone to the jury, and the question would not have been submitted to it. If the court erred in submitting this question for the determination of the jury, the error was committed at the instance of appellant. This court said in *Gaskill v. Washington Water Power Co.,* 17 Ida. 128, 105 Pac. 51: "A party will not be heard to complain in this court of an error which was committed by the trial court at his instance and request."

The action of the court in submitting this question to the jury will not, therefore, be disturbed.

In the submission of the determination of the contract to the jury, appellant was not injured. The trial court had frequently stated that, in his opinion, the contract gave respondent the exclusive right to sell the lands therein described. This is not a case of the ordinary listing of land for sale with a real estate broker, which is terminable at any time by either party, and in which case the broker cannot ordinarily recover a commission on a sale made by the owner. This case is different. Here appellant and the bondholders were nonresidents and living in different places. It seemed impossible that they would accomplish the desired sale of the land. They wanted the land sold, and they agreed to pay respondent twenty per centum of the sale price. On his part, respondent agreed that he would open and maintain an office in Lewiston and advertise the lands, and thereby create a market for their sale. He agreed to

prosecute the matter diligently and bear the entire expense. He also undertook and agreed to sell all the lands of the No. 3 Bondholders within three years; a definite minimum amount during each of the first two years, and all the remainder during the third year. We can come to no other conclusion than that the contract, when all its terms are considered, clearly gave respondent the exclusive right to sell all the lands described therein. Can it be said that, in agreeing to sell all of the land within three years, respondent did not secure thereby the absolute and exclusive right to do the thing he had bound himself to do? We think not. It seems to us that the contract, within its four corners, gave respondent the exclusive right to sell the lands. In pursuance of the contract, respondent opened an office in Lewiston, advertised the land and commenced its sale. Satisfactorily to appellant, he sold the greater portion of the real property, all but about 250 acres of the orchard lands. Under these facts, it is appellant's theory that it had the right to revoke the contract by selling the remainder of the lands, and thereby deprive respondent of the fruits of his labor and money. In our opinion, this is not the law. (*Blumenthal & Co. v. Bridges*, 91 Ark. 212, 120 S. W. 974, 24 L. R. A., N. S., 279; *Rowan & Co. v. Hull*, 55 W. Va. 335, 47 S. E. 92; *Stringfellow v. Powers*, 4 Tex. Civ. 199, 23 S. W. 313; *Attix, Noyes & Co. v. Pelan*, 5 Iowa, 336; *Roth v. Moeller*, 185 Cal. 415, 197 Pac. 62; *Popplewell v. Buchanan* (Tex. Civ.), 204 S. W. 874; *Novakovich v. Union Trust Co.*, 89 Ark. 412, 117 S. W. 246; *Johnson & Moran v. Buchanan*, 54 Tex. Civ. 328, 116 S. W. 875; *Green v. Cole*, 127 Mo. 587, 30 S. W. 135; *Hollweg v. Schaefer Brokerage Co.*, 197 Fed. 689, 117 C. C. A. 83; *Glover v. Henderson*, 120 Mo. 367, 41 Am. St. 695, 25 S. W. 175; *Miller v. Brown*, 115 Wash. 177, 196 Pac. 573.) The facts in the foregoing cases are not very similar to the facts in this case, but the principles of law discussed in the decisions are applicable to the facts here found to exist. See, also, the following cases cited by appellant: *Smith v. Preiss*, 117 Minn. 392, Ann. Cas. 1913D, 820, 136 N. W. 7; *Head-Berry Co. v.*

*Bannister,* 52 Okl. 763, 153 Pac. 669; *Crawford v. Cicotte,* 186 Mich. 269, 152 N. W. 1065; *Snook v. Page,* 29 Cal. App. 246, 155 Pac. 107; *Waterman v. Boltinghouse,* 82 Cal. 659, 23 Pac. 195; *Hammond v. Mau,* 69 Wash. 204, 124 Pac. 377, 40 L. R. A., N. S., 1142; *Dole v. Sherwood,* 41 Minn. 535, 16 Am. St. 731, 43 N. W. 569, 5 L. R. A. 720.)

In the case of *Cloe v. Rogers,* 31 Okl. 255, 121 Pac. 201, 38 L. R. A., N. S., 360, the supreme court of Oklahoma said:

"Where an agency is uncoupled with an interest, it may be revoked by the principal at will, without liability for damages; but where it is for a fixed time, and contemplates on the part of the agent the expenditure of time and money to carry it out, and is accepted and the duties imposed are entered upon by the agent, and money and time are expended in the pursuit of the object of the agency, although the principal has the power to revoke and bring to a termination the contract, yet he lacks the right of so doing, except upon the burden of responding to the agent for such damages as he may suffer by reason thereof." (See cases therein cited.)

The supreme court of Washington, in its opinion in the case of *Hunter v. Wenatchee Land Co.,* 50 Wash. 438, 97 Pac. 494, made the following statement, which seems peculiarly applicable to the facts under discussion:

" . . . . It is impossible to view this contract in the light of all the circumstances surrounding it, the condition of the parties, and the obligations assumed by the respondents, and conclude that it was the intention that the fruits of all the labor and money expended by the respondents in an honest attempt to carry out the terms of the contract should be appropriated by the appellant; and that is what the testimony in this case shows was done or attempted to be done. . . . . We held, in *Munson v. McGregor,* 49 Wash. 276, 94 Pac. 1085, that where, pending the performance of a contract for the sale of land, the subject matter of the contract is conveyed to a third party, the contract is thereby

breached, and the vendee may maintain an action to recover damages for such breach.''

In *Glover v. Henderson,* 120 Mo. 367, 41 Am. St. 695, 25 S. W. 175, the court said:

''But where an agent is employed to perform an act which involves expenditure of labor and money before it is possible to accomplish the desired object, after the agent has in good faith incurred expense and expended time and labor, but before he has had a reasonable opportunity to avail himself of the results of this preliminary effort, it could not be permitted that the principal should then terminate the agency, and take advantage of the agent's services, without rendering any compensation therefor.''

The case of *Kimball v. Hayes,* 199 Mass. 516, 85 N. E. 875, is one where certain persons, desirous of procuring a loan, employed a broker to obtain the money for them within a certain time. Prior to the expiration of the period, they secured the money without the broker's assistance. A recovery was not allowed, but the court, in discussing the obligation of the broker under the contract of employment, said:

'' . . . . The plaintiff, by accepting that employment, came under an obligation to use his best endeavors to place the loan. But the obligation assumed by him went no further. He did not guarantee that he would be successful. He did not agree that the money would be forthcoming on June 1st, when, if ever, it was to be of any benefit to his principals. It would have been an act of incredible stupidity on the defendants' part if under these circumstances they had agreed that plaintiff alone should have the right to place the loan. . . . . That is to say, that they should not be at liberty to provide for the contingency of the plaintiff's failure and must stake their enterprise on the plaintiff's best endeavors being successful. . . . . ''

From the foregoing, it would appear that *Kimball v. Hayes* would have been decided differently had the broker bound himself to procure the loan and have the money available within the required time; and that is the only

decision brought to our attention where an agreement to accomplish the purpose of the employment has been referred to or discussed, and we mention it on that account.

A reading of the foregoing cases cited and from which quotations are made will disclose that in none of them was the broker *required* to do more than advertise and plat the lands listed for sale. Respondent in the instant case not only bound himself to open and maintain an office and advertise the land at his own expense, but he also agreed absolutely to sell all the lands during the term of his contract.

There is a conflict in the authorities as to the right of a broker to a commission on a sale made by the owner or another agent under a contract giving the broker a certain time within which to sell; and there is also some conflict in the decisions as to the rights of a broker in such cases where, in addition to obtaining the right to a certain time within which to sell, he obligates himself to pay out money in preparing the land for sale or in advertising. But, from the principles announced by the courts in determining such cases, it would seem that there could be no question but that a broker would be entitled to recover damages for the breach of a contract upon the sale of the land by the owner directly, or through another agent, prior to the expiration of the time given the agent to sell the land, where the broker is required to not only spend money in establishing an office especially for the purpose of selling, and in advertising the land, but where he has also agreed and undertaken to dispose of all the lands during the term of the agency. Without doubt, the failure of the broker, in such case, to sell the lands within the time prescribed would constitute a breach of the contract for which the owner could recover such damages as had been sustained. It necessarily and logically follows that, under these facts, the sale of the lands by the appellant, who is the other party to this contract and who occupies the position of owner in so far as this case is concerned, or by anyone else for the

appellant, constituted a breach of the contract, for which appellant is chargeable in damages.

It is insisted that respondent is not entitled to recover because he waived such right as he had under his contract by urging that bulk sales be made when such sales were not contemplated by the contract. A large bulk sale had been made to White Bros. & Crum Company only a short time prior to the sale to Latta. Appellant, the bondholders' committee and the bondholders were anxious to sell all the lands, as was respondent, but respondent had nearly three years within which to sell the lands described in his contract. In view of the provisions of the contract, the relations between the parties, and the fact that a former bulk sale had been made upon which he had received a commission, it is not reasonable to conclude that, by advising a bulk sale which all parties desired, respondent thereby intended to waive his rights under the contract. It is more reasonable to suppose that respondent, in order to accomplish a bulk sale of all the lands, was willing to reduce the commission he was entitled to receive on the sale of the orchard lands.

In one of appellant's exhibits, being a letter from respondent, this statement is found:

"If we were to wholesale it [the lands] out, I will cut my commission in two . . . . "

In another of appellant's exhibits, a letter to respondent, this statement is found:

"I would like to have a definite understanding regarding the commissions to be paid . . . . You say that you will cut the commissions in half in the next deal. Now, does that mean 5% or does it mean 10% or one-half of the original agreement where lots were to be sold as single lots? I think on a deal of this size that 5% would be a very fair commission . . . . "

In one of respondent's exhibits, a copy of a letter in reply to the foregoing, respondent said:

"I can make more money in selling these lands out more slowly and according to the contract and at high prices,

than by selling at a lower price and at the same time reducing my commission. . . . . As to my commission for selling the remainder of the land to White Bros. & Crum, or any other interests, if it is done in bulk, I would be willing . . . . to cut my commission in two . . . . If I were paid in cash . . . . I will shade the commission to $7\frac{1}{2}\% \ldots$ ''

From the foregoing correspondence, it is evident that respondent did not waive his right to a commission by urging a bulk sale of the lands to White Bros. & Crum Company. In so far as the sale to Latta is concerned, respondent did not waive any of his rights because he knew nothing of the Latta deal until after it had been effected.

It is contended that a recovery should not be allowed for the reason that the bondholders were the owners of the property; that they never at any time gave an exclusive right of sale to appellant or to the committee of the bondholders; that appellant was only an agent; that it could not act beyond the scope of its authority; and that the bondholders, who had never divested themselves of their power to sell their property, made the sale of their lands to Latta.

As we understand it, the authority of appellant to make the contract is not questioned in the pleadings. It is alleged in the complaint and admitted in the answer that title to the property was taken in appellant as trustee for the bondholders, with power in appellant ''to contract with respect to the said property and to sell and dispose of the same'' upon terms approved by the bondholders' committee. The answer ''admits that John Latta purchased from defendant the tracts of land specifically described in plaintiff's complaint . . . . for one hundred five thousand dollars ($105,-000).'' The amended answer alleges that ''defendant sold the lands . . . . to John Latta . . . . '' It is also alleged and admitted that appellant entered into the contract with respondent.

Appellant has admitted its authority to make the contract upon which the action is predicated. The action is not

against the bondholders, and it would seem that, under the issues in this case, any consideration of the power of appellant to make and enter into a contract giving respondent the exclusive right to sell the lands would be out of place. Furthermore, it appears from the evidence that the owners, the bondholders, did not negotiate the sale of the lands, but that the sale was finally consummated by the committee representing the bondholders, and it also appears from the record that the members of this committee were not bondholders. It would seem, therefore, that the sale to Mr. Latta was finally brought about not by the owners themselves, but by another agent, to wit: the bondholders' committee. We see, therefore, no foundation in fact, even if it were material, for the contention that the bondholders never divested themselves of the right to sell their property, and that such sale was made by them. (*Truesdale v. Philadelphia etc. Co.*, 63 Minn. 49, 65 N. W. 133; *McGovern v. Bennett*, 146 Mich. 558, 109 N. W. 1055.)

Appellant complains of the action of the trial court in refusing to instruct the jury upon the question of estoppel. It is the contention of appellant that respondent knew of the sale to Latta while it was pending; that he advised the sale and did not claim a commission; and that respondent, "by his actions in advising bulk sales and in permitting the committee to make bulk sales and include planted orchard lands therein, and by insisting that bulk sales should be made to close the transaction at once, and with his knowledge of the situation, has become and is estopped to assert a right of recovery against this defendant either on the original contract, by way of contract or compliance therewith, or for damages, either for breach of the contract or sounding in tort."

On this point, is it sufficient to say that the evidence in the record was that respondent did not know of the sale to Latta until he was notified of the same by the bondholders' committee, and, consequently, he could not have waived or agreed to anything in connection with the Latta deal. The only interest respondent had in a sale of the

38 Idaho.—20

lands was the earning of a commission, and since there is no evidence that respondent ever did or said anything that would lead the bondholders' committee, the appellant, or anyone else to conclude that any of his rights under the contract were waived in the sale to Latta, there was no evidence to justify instructing the jury on the question of estoppel. The trial court did not err in refusing to give the requested instruction.

Other assignments of error are urged in appellant's brief, but to enter into a discussion of each of them would unduly extend this opinion. However, all the assignments have been carefully considered, and we have concluded that no reversible error was committed in the trial of the case.

The judgment is affirmed. Costs to respondent.

Budge, C. J., and McCarthy and Dunn, JJ., concur.

Steele, District Judge, sat at the hearing but took no part in the decision.

Petition for rehearing denied.